JANUARY TERM, 1884, No. 344.                    APRIL 18, 1884.

## Staub *v.* Wolfe.

1. Where a claim before an alderman was $225 and the plaintiff an ignorant woman who did not understand the English language, on appeal stated that her claim was for $492, it was not error for the Court, the succeeding day of the trial, to permit her to correct the mistake.

2. Where the plaintiff testified that, at the time she signed a written release, the defendant promised to furnish her with a house and support, and the Court instructed the jury that if they found that such statements were made to her, and if they were the inducements and consideration for her execution of the paper, and it failed by the defendant refusing to perform his agreement, she could recover any money due and unpaid to her notwithstanding the paper, it was held not to be error.

3. In such a case, where the plaintiff was ignorant, in a strange land, unacquainted with the people around her, alone, friendless, in destitute circumstances, with an aged mother and two small children dependent upon her, without a home, without food, or any provision for her support, and unable to speak the language, nice and critical discriminations upon the very words of the testimony are not requisite nor conducive to the due administration of justice.

4. The Supreme Court will not reverse a judgment because the court below erred in prescribing the order in which counsel should address the jury.

Before MERCUR, C. J. ; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas of *Luzerne County*.

Appeal of Peter Staub, Sr., from the judgment of a justice of the peace in favor of Maria Wolf for wages.

The following facts appeared at the trial, October 1, 1883, before WOODWARD, J.:

In 1881, Peter Staub, living on a farm in Kingston township, Luzerne county, Pa., went to Germany, and while there made such statements to the plaintiff, Maria Wolfe, as induced her to accompany him home. Maria Wolfe, her young daughter, and her mother returned with him to America. He paid for their passage. They lived with him, upon his farm, from March, 1881, until August, 1882.

The plaintiff testified in substance, *inter alia :*

"I milked the cows, got the breakfast, washed the dishes, made the beds, worked in the field, helped to plant the corn, to unload the hay, to gather the grain, made the

[Staub v. Wolfe.]

butter, drove the cattle, helped in the barn, washed, ironed, cooked, and baked. I and my mother did the mending and knitting. The child did general chores. I worked eighty-two weeks. Old Staub told us that we must leave, and I told him if he would pay me I would leave. I told him if he would pay me, and would find me a place to go to, and get me something to eat and drink, I would go. He then brought a constable. Staub and his son packed up our things, and they took them out to the road. The next day he drove us to Wilkes-Barre. He took us to Mr. Ziegler's office. Squire Ziegler commenced to write what they told him to write. They told me to sign it. Both of them told me to sign it. I signed it. I got no money on that day."

The paper signed by the witness was as follows :

"This is to certify that we, Peter Staub, Sr., of Kingston township, Pennsylvania, and Maria Wolfe, of the same place, have this day, August 26, 1882, settled our accounts and matters of any indebtedness between us, of whatsoever kind and nature the same may have been up to date. I, Peter Staub, have received satisfaction for money advanced for said M. Wolfe, and I, Maria Wolfe, have received all wages due me from said Staub for manual work and labor done for him. Witness our hands and seals this 26th day of August, 1882.

PETER STAUB. [L. S.]<br>MARIA WOLFE. [L. S.]"

The witness continued :

Q. How much were your demands, in dollars and cents, of Mr. Staub? What is the amount of your claim?

A. I want a little time to consider ; four hundred and ninety-two dollars.

I received on account what I got for shoes and clothing. He paid for my coming to this country and for my child's passage here. He paid a doctor bill for me—$10 00.

By the COURT :

Q. State whether this claim of $492 is the amount which you demanded after these payments made?

A. No ; what he owes me shall come from this.

The following day the witness, being recalled, testified :

Q. State whether, when you said yesterday that your action was $492, you were not mistaken, and whether your action was not before Alderman Buckley for the sum of $225?

(Objected to.)

Q. Whether you yesterday said that your claim was $492?

[Staub *v.* Wolfe.]

A. It was a mistake.

Q. Explain that mistake.

A. I intended to say that I had complained before the squire for $225.

Q. What was the reason that you signed this paper before this justice?

(Plaintiff's counsel proposes to prove, since it is claimed that the defendant has a receipt from the plaintiff in full of all demands and that a settlement was made with plaintiff, that plaintiff was induced to sign this paper by Mr. Staub stating to her, in the presence of her mother, that if she would go and sign such a paper he would find lodgings and provide for her, that she should have a living without doing any work; in other words, that he would provide for her for life if she would sign such a paper.)

Defendant's counsel object to the proposed evidence as immaterial and incompetent in this action; that the remedy would be by action on a breach of that contract; that evidence of promises made at a time prior to this settlement would be immaterial so far as relates to the setting aside of this settlement made on the 26th of August, 1882, before the magistrate.

*Second.* That the facts proposed to be proved, even if true and established, would be incompetent evidence for the purpose proposed, inasmuch as they show neither fraud, imposition, nor undue influence.

*Third.* That even if it were true, and thereby any right of action accrued to the plaintiff in this case, it would not be such an action as the present, but would be an action for the breach of the mentioned contract.

Plaintiff more fully stated the offer as follows:

We propose to show that Mr. Staub promised to the plaintiff that if she would leave his house and give him a receipt, then he would find lodging for her, would find meat and drink for her, and she could live there without doing any work; he would provide for her if she would give him that receipt. Also, that the witness was taken then to Wilkes-Barre; that a constable went along; that she was kept in the office of Esquire Ziegler from eight o'clock until twelve o'clock, and that she was prevailed on there to consent and to sign her name to the receipt, and that afterwards the defendant did not fulfill his promise.

The defendant's counsel objected for the same reasons as before. The Court overruled the objections under exception.

[Staub *v.* Wolfe.]

(Third assignment of error.)

A. He said to me that he wanted me to go with him to Wilkes-Barre, and I remarked that I would not go with him unless I knew where I was going and whether I was to have something to eat and drink. He said that I would get a dwelling, and eat and drink, and a stove, and everything that was necessary for me. I went with him to go into that dwelling. He told me to come along, and I thought that was the place where I was to live when I went up the stairs. I didn't know it was Squire Ziegler's office. I took a seat and they commenced writing. They were talking English together and Mr. Ziegler wrote it down. I did not understand what they said. He said I was to have $2 25 a week. Staub said I would get, after I signed the paper, a dwelling and everything. I lived with Mr. Staub seventy-three weeks and not eighty-three. It was a mistake that we calculated six days to a week.

Q. State what the conversation was between Mr. Staub and you in Esquire Ziegler's office.

A. That they had now settled, and everything was now in the paper, and I would get just what was stated. I would get all that was stated.

Upon cross-examination, she said, *inter alia :*

Q. State whether or not he made you any promises in Squire Ziegler's office.

A. He told me all the time that I was provided for; that I would get all.

(By plaintiff's counsel :)

Q. In Squire Ziegler's office?

A. Yes.

Q. What promise did he make to you in Squire Ziegler's office?

A. He promised me a dwelling and all that I needed that was necessary.

The transcript from the docket of Alderman Bilkley set forth: "Plaintiff sworn and claims $225 for work and labor done by her and her minor child."

The defendant presented, *inter alia,* the following points :

*First.* That a justice of the peace has no jurisdiction of a claim exceeding three hundred dollars, and, upon appeal of such case, the court of common pleas has no jurisdiction, and a party cannot give jurisdiction to a justice of the peace by remitting a part of the actual claim and simply suing for the balance. Therefore, if the jury believe the actual claim of the plaintiff to be, as she distinctly testified, $492, the present action is not

[Staub *v.* Wolfe.]

maintainable, and the verdict must be for the defendant; and the correction by the plaintiff of the amount of her claim, under the direction of her counsel, simply for the purpose of reducing it to an amount within the jurisdiction of the justice, is not available to confer jurisdiction.

*Answer.* We say, in answer to this point, that so far as regards the first portion of it, it is affirmed, that portion being "that a justice of the peace has no jurisdiction of a claim exceeding $300, and upon appeal the court of common pleas has no jurisdiction, and that a party cannot give jurisdiction to a justice by remitting a part of the actual claim and suing for the balance." The remainder of the point we decline to affirm, because it assumes questions of fact which are to be found by the jury. We further say to you, that a witness who has made a mistake in naming the amount of her claim, when upon the witness-stand, has a right, upon reflection, to go upon the stand again and correct that mistake, and her doing so does not affect the status of the case against her.

(Second assignment of error.)

*Fourth.* That even if the jury believe the statement of the plaintiff that she was induced to make the settlement by reason of defendant's promise to find her lodging and living subsequently, that would not amount to a fraud upon her or be evidence of imposition or undue influence; if such promise were made and subsequently broken, that would simply furnish ground of action for breach of such agreement, but would not warrant the bringing of the present action in disregard of such settlement.

(Sixth assignment of error.)

*Answer.* We decline to affirm that point.

*Fifth.* That there is no sufficient evidence of either fraud, imposition, or undue influence to warrant the jury in finding that the settlement in the case is vitiated by fraud.

(Seventh assignment of error.)

*Answer.* We decline so to charge you, and say that the question is for the jury, under our general instructions.

[Now, gentlemen, we say to you that, on its face, this paper is a full and final settlement between the parties; that it amounts to an acquittance and receipt by the plaintiff to the defendant and from the defendant to the plaintiff, of any mutual demands existing between them; and unless you believe that her signature to this paper was obtained from her by what amounts in law to a deception and a fraud practiced upon her, or that she la-

[Staub *v.* Wolfe.]

bored under some mistake of fact or law when she signed it, it is conclusive of this controversy.

It is alleged, however, on the part of the plaintiff, that while it is true she signed this paper, she acted under a misapprehension, and was defrauded. She defines the fraud to exist in this: That she was willing to give up any claim upon the defendant for wages, upon the consideration and agreement upon his part, as she alleges, made by him to her, that he would provide lodgings for her and support, elsewhere than in his own family ; and that, having failed to furnish such lodgings and support, he is in default, has violated his contract, and that therefore it cannot be set up against her in this action.

This brings us to one of the main questions of fact in the case, which is for you. Is this paper free and clear, under the evidence, from the allegation of fraud, made by the plaintiff? If it is, it is a final answer to her claim for wages in this action. If it is not, it may not be.]

(Fourth assignment of error.)

[But if, on the contrary, you believe such statements were made to her as she alleges were made to her—that she was to have a home and support if she would sign the paper and demand no further wages—if that was the inducement and consideration for her execution of the paper, and it has failed by the defendant refusing to perform these covenants and agreements in that behalf, then, if the evidence shows that any money is due her and unpaid her for wages, she might recover in this case such sums as is honestly due her, notwithstanding this paper.]

(Fifth assignment of error.)

The counsel for defendant claimed to conclude, on the ground that the plea was simply payment.

The COURT. Under the course which the trial has taken and the nature of the defense, it is not clear to us that the plea in this case is affirmative in the sense contemplated by the law, where the defendant is entitled to close. We prefer, therefore, to follow the usual practice. Exception.

(Ninth assignment of error.)

October 3, 1883, verdict for plaintiff, and subsequently judgment thereon.

The defendant thereupon took this writ, assigning for error the answers to his points as above, and the portions of the charge in brackets.

*A. Ricketts* for plaintiff in error.

[Staub *v*. Wolfe.]

The Court erred in allowing the defendant in error to reduce her claim after stating it to be an amount beyond the ·jurisdiction of the alderman: Wright *v.* Guy, 10 S. & R., 227; Collins *v.* Collins, 37 Pa. St. R., 387; Stroh *v.* Uhrich, 1 W. & S., 57; Youngman *v.* Miller, 98 St. R., 196.

The question of fraud should not have been submitted to the jury. There was no evidence of fraud in the case.

The plea in the case was payment. This was an affirmative plea, and under the rules of the court the defendant should have been allowed to close. It is error for a Court to disregard its own rules: Brennan's Estate, 65 St. R., 16.

*Gustav Hahn* for defendant in error.

Fraud is a question of fact for the jury. Here fraud was alleged by defendant in error, and it was properly submitted by the court: Lansdale *v.* Richardson, 1 W. N. C., 413.

The transcript of the justice of the peace showed the amount of Maria Wolf's claim, and proved that her statement made on the first day of her examination was a mere mistake.

April 28, 1884, the opinion of the Court was delivered by GREEN, J.:

This action originated before a justice of the peace. The transcript shows that the plaintiff claimed $225 from the defendant, as a balance due her for work and labor done by herself and her child. It also shows that she testified to that amount, and that a judgment was rendered in her favor for that sum by the justice. On her examination in chief, she said her claim was for $492, and the next day, under objection and exception by the defendant, she said this was a mistake, and that her claim was for $225. We are not able to perceive any legal reason for refusing to permit her to give this testimony. She is a very ignorant woman, did not understand the English language, and might easily have made a mistake in stating the amount of her claim when on the witness-stand in a court of justice. The fact that she had, before the justice, presented a claim of $225, and testified in support of it, is conclusive that there was a mistake somewhere, and that being so, there was certainly a right of explanation. The evidence as to the time over which her work extended, and the rate of wages paid for such labor, corroborates the correctness of her explanation. Nor

[Staub v. Wolfe.]

can we discover any error in the action of the court in reference to the written evidence of the settlement.

The Court charged the jury that on its face it was a full and final settlement between the parties, and amounted to an acquittance. The question whether it was obtained from her by fraud and deception was a pure question of fact, and was necessarily and very fairly submitted to the jury by the Court. The jury found that it was so obtained, and we think there was sufficient testimony in the case both to justify the court in leaving the question to the jury and to warrant the jury in finding the verdict they did. No money or other thing of value was given to the plaintiff at the time the paper was signed. As the jury has found that she was then entitled to more than a $100, in addition to whatever she may have received before, we are bound to assume that the effect of the paper upon its face was to deprive her of that amount, which, irrespective of the paper, she had a right to demand of the defendant. A person in her situation and circumstances is entitled to perfectly fair and upright treatment in making a settlement and signing a paper such as this. She testified that she was induced to sign it by reason of promises made by the defendant to furnish her with a house and support. She was asked:

"Q. State what the conversation was between Staub and you in Esquire Ziegler's office?

A. That they had now settled and everything was in the paper, and I would get just what was stated, I would get all that was stated." And again:

"Q. State whether or not he made you any promises in Squire Ziegler's office?

A. He told me all the time that I was provided for, that I would get it all.

Q. In Squire Ziegler's office?

A. Yes.

Q. What promise did he make to you in Squire Ziegler's office?

A. He promised me a dwelling and all that I needed that was necessary."

There was other testimony of a similar import in the case, and the Court below, in dealing with this branch of the case, charged the jury that if the plaintiff signed the paper, understanding fully what she was doing, and if the representations about the furnishing a house and support for her were not the inducement for her signing, or if such representations were not made, then she was debarred by the paper, and could not recover. But if, on

[Grassmyer's Appeal.]

the contrary, the jury believed such statements were made to her, and if they were the inducement and consideration for her execution of the paper, and it failed by the defendant refusing to perform his agreement, then if any money was due her and unpaid for her wages, she could recover, notwithstanding the paper. In all this we think there was no error. It cannot be said there was no evidence, or only a scintilla upon this subject. It is not difficult to understand that a woman, situated as this one was, ignorant, in a strange land, unacquainted with the people around her, alone, friendless, in destitute circumstances, with an aged mother and two small children dependent upon her, without a home, without food or any provision for her support, and unable to speak our language, might very easily be induced to sign almost any paper, upon a promise that if she would do so she should have a home and support provided for her. In such a case, nice and critical discriminations upon the very words of the testimony are not requisite, nor are they conducive to the due administration of justice. It is the substance only of the language and statements employed that needs to be considered. Upon a review of the whole testimony, we are satisfied with the manner in which the subject was treated by the court below. This practically disposes of the case, as the several assignments of error raise only questions which relate to the matters we have considered. As to the ninth assignment, it is only necessary to say that the Supreme Court will not reverse a judgment because the court below erred in prescribing the order in which counsel should address the jury: Smith *v.* Frazier, 3 P. F. S., 226 ; Richards *v.* Nixon, 8 Harr., on p. 23.

Judgment affirmed.